## WILLIAM BOSSENMAIER v. HARRY L. BROWN AND OTHERS.[1]

January 2, 1931.

No. 28,128.

*Stinchfield, Mackall, Crounse & McNally* and *Donald A. Holmes,* for appellant.

*Kerr, Nelson, Burns & Mohan,* for respondent Harry L. Brown.

*T. J. Doyle,* for plaintiff-respondent.

STONE, J.

In this action for the foreclosure of a mechanic's lien, the issue tried below, and which now comes to us for review, was between plaintiff, a plumbing contractor, and defendant Modine Manufacturing Company, which had furnished and installed the radiation for the job hereinafter referred to. The Modine company acknowledged an indebtedness to plaintiff of $435.50, but the decision was that plaintiff recover his entire claim, $1,081.50. The Modine Manufacturing Company appeals from the judgment, both plaintiff and defendant Brown being parties to the appeal.

Plaintiff declares upon an express contract, whereby the Modine company employed him "to furnish certain material and do certain labor required in the alteration and repairing of certain portions or parts of the heating equipment" in an apartment house property owned by defendant Brown. The building, known as the Brownley Apartments, had been erected by him during the summer

[1]Reported in 234 N. W. 303.

of 1925. The boiler and all heating equipment, except radiation, had been installed by other contractors. The Modine company furnished and installed only the radiators, which were of a novel type just coming into use. The heating system did not work satisfactorily. One Walter Stevens had superintended the building job for Brown. He demanded of the Modine company that they make good the defects for which they were responsible, and he insists that a Mr. Rice, representing that company, assured him "that they would furnish and pay for any work that may be found necessary to complete" the job. Mr. Stevens does not pretend that he had any authority from the Modine company to employ anybody to do the work for them or to bind them contractually in any manner or to any extent. He did refer them to plaintiff as a "suitable man, in my opinion, to do this work."

The proof of plaintiff's contract with the Modine company is his testimony, which he gave with commendable candor. He claims nothing more than that the Modine company employed him to install valves on the radiators, the work to be done on a "time-and-material basis." To start with, the radiators had been installed without valves. In order to control their action, Mr. Stevens had concluded that valves were necessary. The Modine company acquiesced, and the contract with plaintiff followed, limited, we repeat, by the unequivocal testimony of plaintiff himself, to the installation of the valves and not going beyond that. The testimony of the witnesses for the Modine company accords with that of plaintiff.

In order that the valves could be installed the baseboards had to be removed to give access to the radiators, and it was a term of the agreement between plaintiff and the Modine company that the custodian of the building, an employe of defendant Brown, "was to do that." Pursuant to that contract, and none other, plaintiff went to work. About the "second or third day" plaintiff was told by his steamfitter that the custodian was not taking off the baseboards or replacing them. Thereupon plaintiff got Mr. Stevens on the telephone. Their testimony concerning the conversation is not

altogether in accord. Plaintiff says that he inquired of Stevens: "Who was to pay me for the additional work that had not been ordered by Mr. Mosher [agent for the Modine company]?" Stevens, according to plaintiff, said "that he would see that it would be taken care of as they [Brown] held enough money from the Modine Manufacturing Company to pay me for any work that I might do there." Stevens testifies that plaintiff informed him "that he was working installing the valves and that the custodian, who had commenced to take off the baseboards, was unable or had refused to continue, and Mr. Bossenmaier asked me who, or how he was going to be paid. My answer was that there wasn't any question as to his being paid. I had the assurance from the Modine company recently and on many occasions that they would furnish and pay for any work that may be found necessary to complete" the job. Needless to say, Stevens was not then speaking as the agent of the Modine company and was not pretending to bind it contractually. He was speaking only for his own employer, Brown, and could bind no one else.

Having faith in the assurance given him by Stevens, whatever it was, plaintiff proceeded with the work. His charge for installing the valves is $435.50, for which the Modine company admits liability. In addition he makes charges, and no one seems to question their reasonableness, for additional work in packing ducts, removing defective connections, and "traps" in the piping. The aggregate is $1,081.50. It seems quite apparent that for much of the defective work and material which rendered necessary the repairs made by plaintiff the Modine company was not responsible. In that connection it is an interesting circumstance that the asbestos packing used by plaintiff was furnished by defendant Brown, whereas his contract with the Modine company, so far as it went, required him to furnish all the material.

Further discussion of the case would serve no purpose. By express waiver plaintiff has relinquished his lien right. The remaining issue is plainly of fact. In vain have we searched the record for evidence which would extend the coverage of the contract be-

tween plaintiff and the Modine company beyond the one item of valve installation. We regret to say therefore that the finding made below that *all* plaintiff's labor and material went into the performance by him "of his contract with the defendant Modine Manufacturing Company" finds no support in the evidence. The undisputed testimony, both for plaintiff and the Modine company, shows that contract to have been limited as already stated.

Of course the baseboards had to be removed in order that the valves could be installed. But the Modine company did not undertake their removal. It was an express term of the contract, as binding on plaintiff as on the Modine company, that the custodian of the building would attend to that item. When it was found that he was not doing it, plaintiff, instead of bringing the matter to the attention of the Modine company, invoked the aid of Mr. Stevens, agent of the owner, Brown. The assurance he got from Stevens was not that of the Modine company. If within his authority, what Mr. Stevens said was binding upon Brown and upon him only. It could not impose obligation upon the Modine company.

It follows that the judgment must be reversed and the case remanded with directions to amend the findings of fact and conclusions of law conformably to the views expressed in this opinion and so as to order judgment as between plaintiff and the Modine Manufacturing Company accordingly. This decision is without prejudice to whatever issue may remain as between plaintiff and defendant Brown, or as between the latter and the Modine Manufacturing Company. Such issues may require another trial. That question will be for determination below.

Judgment reversed and the case remanded for further proceedings not inconsistent with this opinion.

OLSEN, J. (dissenting).

From the facts and circumstances shown by the evidence I am satisfied that the Modine company was liable to plaintiff for the work done and that the trial court's findings and conclusions are sustained by the evidence and should be affirmed.

DIBELL, J. (dissenting).

I concur with Mr. Justice Olsen.